UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFERY A. MCKINSTRY,

               Plaintiff,             Case No. 4:20-cv-10780
                                         District Judge Stephanie Dawkins Davis
v.                               Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13), and AFFIRM THE COMMISSIONER'S DECISION

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's cross-motion for summary

judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

**II.     REPORT**

Plaintiff, Jeffery A. McKinstry, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application(s) for disability insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the

Commissioner's cross-motion for summary judgment (ECF No. 13), Plaintiff's

reply (ECF No. 14), and the administrative record (ECF No. 10).

### A.    Background and Administrative History

Plaintiff filed the DI application(s) at issue in this appeal on June 14, 2016,

alleging that his disability began on April 29, 2016, at the age of 46.  (ECF No. 10,

PageID.170, 172.)  In his disability report, he alleged that certain conditions

(neuropathy, numb hands and feet, vertigo, left knee arthritis, and weakened grip)

limit his ability to work.  (*Id*., PageID.190.)  On January 23, 2017, the Social

Security Administration (SSA) found that Plaintiff was not disabled.  (*Id*.,

PageID.103-105).

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").

(ECF No. 10, PageID.116-117.)  On September 13, 2018, ALJ Manh Nguyen held

a hearing, at which Plaintiff and a vocational expert (VE), Jessica Christensen,

testified.  (*Id*., PageID.74-92; *see also id*., PageID.255-257, 260.)  On December

12, 2018, ALJ Nguyen issued an opinion, which determined that Plaintiff was not

disabled within the meaning of the Social Security Act.  (*Id*., PageID.56-68.)

Plaintiff submitted a request for review of the hearing decision.  (Id.,

PageID.167-169.)  However, on January 28, 2020, the Appeals Council denied

Plaintiff's request for review.  (*Id*., PageID.45-50.)  Thus, ALJ Nguyen's decision

became the Commissioner's final decision.  Plaintiff timely commenced this matter on March 25, 2020.

### B.    Plaintiff's Medical History

The administrative record contains approximately 374 pages of medical records, which were available to the ALJ at the time of the December 12, 2018 decision.  (ECF No. 10, PageID.71-73, 261-634 [Exhibits 1F-22F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 29, 2016, the alleged onset date (AOD). (ECF No. 10, PageID.61.)  At **Step 2**, the ALJ found that Plaintiff had several severe impairments (degenerative disc disease (DDD) of the cervical spine, Bell's palsy, polyneuropathy, autoimmune neuropathy, Raynaud's phenomenon, acute left knee effusion, and headaches).  (*Id*..)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*., PageID.61-62.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work [*i.e., exertional limitations*] . . . except
> he can never climb ladders, ropes, or scaffolds; kneel; or crawl.  The
> claimant can occasionally climb stairs and ramps, balance, stoop, and
> crouch [*i.e., postural limitations*].  He can frequently reach, handle,
> and finger [*i.e., manipulative limitations*].  He must use a cane for
> walking [*i.e., exertional limitation*].  He cannot tolerate exposure to
> vibrations or work around hazards such as unprotected heights or
> unguarded uncovered moving machinery.  He cannot perform
> commercial driving [*i.e., environmental limitations*].

(*Id*. at 62-66.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 66.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ found that there were jobs that

existed in significant numbers in the national economy that Plaintiff could have

performed.  (*Id*. at 67-68.)  The ALJ therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, from April 29, 2016

through the date of the decision.  (*Id*. at 68.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

4

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.   **Analysis**

Plaintiff contends that he:  (1) meets Listing 11.14; and, (2) is disabled under the Social Security Act.  (ECF No. 12, PageID.657-663; *see also* ECF No. 14.) Plaintiff has the burden of proof on each of these statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Therefore, the Court's efforts are frustrated by Plaintiff's seven-page argument, which does not contain a single medical record citation. (*See* ECF No. 12, PageID.657-663; *see also* ECF No. 14, PageID.695-699.) Perhaps, as the Commissioner generously speculates, "the citations in the fact section of his brief are intended to substantiate his argument that his impairments meet the requirements of listing 11.14[.]"  (ECF No. 13, PageID.682; *see also* ECF

No. 12, PageID.645-653 [Pl.'s Statement of Facts].)  However, the administrative

record in this case is nearly 600 pages long, and the Court will not search the

record for potential arguments or evidence beneficial to Plaintiff, especially for a

claimant who is represented by counsel.  *Jones v. Comm'r of Soc. Sec.*, 2013 WL

4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search

the administrative record for evidence to support [Plaintiff's] 'argument' or find

law supporting [his or] her claims. This Court does not conduct a *de novo* review

in social security proceedings, and certainly cannot be expected to craft an

argument on [Plaintiff's] behalf.") (quotation marks and citations omitted).

### 1.    Listing 11.14A - "Peripheral neuropathy"

Listing 11.14A requires "disorganization of motor function in two

extremities" (*see* Listing 11.00D1) *and* "an extreme limitation" in standing up

from a seated position (i.e., exertional activity), balancing while standing or

walking (*i.e.*, postural activity), and using the upper extremities (*i.e.*, manipulative

activity) (*see* Listing 11.00D2).  By way of background, the state agency

consultant(s) determined that Plaintiff's peripheral neuropathy was "severe" and

considered Listing 11.14 (ECF No. 10, PageID.98-99, 105), but the consultant(s)

also determined that Plaintiff did not have manipulative limitations (*id*.,

PageID.101).  Ultimately, while ALJ Nguyen determined that polyneuropathy and

autoimmune neuropathy were among Plaintiff's severe impairments, he also

determined at Step 3 that Plaintiff did not have disorganization of motor function.
(*Id.*, PageID.61-62.)

### a.     Disorganization of motor function (Listing 11.00D1)

Plaintiff's first statement of error challenges the ALJ's Step 3 conclusion
that Plaintiff "does not have disorganization of motor function . . . ."  (ECF No. 10,
PageID.62.)  *Disorganization of motor function* means "interference, due to your
neurological disorder, with movement of two extremities; i.e., the lower
extremities, or upper extremities (including fingers, wrists, hands, arms, and
shoulders)."  Listing 11.00D1.

The ALJ explained that "the evidence reflects the claimant's polyneuropathy
results in frequent, as opposed to constant, use of the upper extremities for
reaching, handling, and fingering . . . ."  (ECF No. 10, PageID.62.)  Then, between
Steps 3 and 4, when determining Plaintiff's RFC, the ALJ concluded that Plaintiff
"can frequently reach, handle, and finger."  (ECF No. 10, PageID.63.)  Relatedly,
the ALJ's RFC discussion specifically notes that "[t]he examination findings do
support some limitations with reaching, handling, and fingering however."  (*Id.*,
PageID.66.)  Still, the ALJ assigned "great weight" to state agency medical
consultant Jennie Wentzloff, M.D.'s opinion that Plaintiff "is limited to sedentary
work with no significant manipulative restrictions[.]"  (*Id.*; ECF No. 10,
PageID.101, 103).

Plaintiff contends that he has "disorganization of motor function in both his upper extremities[,]" and "a disorganization of his lower extremities." (ECF No. 12, PageID.657-658.) Notwithstanding the argument's lack of medical record citations, the Court suspects Plaintiff would rely upon those items his counsel specifically mentioned at the administrative hearing, such as:

- The July 13, 2016 function report, which was completed by Plaintiff's wife and which reflects that he needs help dressing, cannot stand in the shower, drops things when feeding himself, has difficulty using the toilet, does not prepare his own meals, is unstable and loses balance, has difficulty holding a pen, and cannot hold on to money (ECF No. 10, PageID.203-206 [Ex. 3E])

- The August 28, 2016 third-party function report, which reflects Plaintiff's use of a cane and a walker (ECF No. 10, PageID.227 [Ex. 5E])

- The March 29, 2017 notes from Dr. Bambakidis of the Cleveland Clinic that Plaintiff's gait "had a definite antalgic as well as minimally ataxic quality[,]" and he "had a little bit of difficulty walking tandem[,]" (ECF No. 10, PageID.542 [Ex. 20F])

(*See* ECF No. 10, PageID.79-80.)[2] Moreover, within Plaintiff's motion brief, the Court can discern likely references to, *inter alia*:

---

[2] Plaintiff's counsel also referenced: (i) the July 17, 2015 Northern Michigan Rheumatology notes, which indicate that Plaintiff has "trouble getting out of bed in the morning and rising from low seats[,]" and decreased pin sensation in the bilateral lower extremities (ECF No. 10, PageID.495, 497 [Ex. 17F], ECF No. 1, PageID.266, 268 [Ex. 1F]); (ii) the March 4, 2015 notes from Craig Kuesel, D.O., whose neurological examination of muscle strength revealed "normal strength in all limbs, except bilateral EHL [extensor hallucis longus] and mild grip

- Medical records dated July 2016, October 2016, January 2017, and March 2017 that reflect antalgic gait (ECF No. 10, PageID.357 [Ex. 5F], 437, 444 [Ex. 13F], 542 [Ex 20F], 555, 562, 568 [Ex. 21F]);

- An apparent January 9, 2017 electromyogram (EMG), which "demonstrate[ed] improvement of nerve conduction studies with continued prolonged latencies, decreased conduction velocities and prolonged F-responses[,]" (ECF No. 10, PageID.413 [Ex. 11F]);

- An August 2018 examination, which revealed "profoundly affected sensory function with relatively spared motor (mild distal arm weakness)[,]" (ECF No. 10, PageID.462 [Ex. 15F], ECF No. 10, PageID.634 [Ex. 22F]); and,

- Plaintiff's September 13, 2018 testimony that he is, at most, comfortable lifting three to five pounds, he can stand for 10 to 15 minutes, and he walks with a cane (ECF No. 10, PageID.80-82).

(ECF No. 12, PageID.657-659; ECF No. 14, PageID.695-696.)

### b.    Extreme limitation (Listing 11.00D2)

The Court will assume, for the sake of argument, that Plaintiff has satisfied Listing 11.00D1, as even the Commissioner focuses on Listing 11.00D2.  (ECF No. 13, PageID.682.)  Nonetheless, even if the various foregoing references constituted "disorganization of motor function in two extremities," as defined by

---

weakness[,]" (ECF No. 10, PageID.484 [Ex. 16F]); and, (iii) the January 4, 2016 notes that he drags his left leg, sometimes trips and falls, drops things, and has numbness and tingling in the hands and feet (ECF No. 10, PageID.282 [Ex. 2F], 373 [Ex. 5F], 512, 514 & 517 [Ex. 18F], 615 [Ex. 21F]).  However, these records predate the April 29, 2016 alleged onset date.

Listing 11.00D1, Plaintiff would still need to illustrate the other requirement of Listing 11.14A – *i.e.*, such disorganization results in "an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities."  An "extreme limitation" means "the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities."  Listing 11.00D2.

Plaintiff has not satisfied his burden on this element.  First, if he intended to argue that he cannot stand up from a seated position, his reference to a pre-AOD July 17, 2015 record (ECF No. 10, PageID.266, 495) is insufficient.  (ECF No. 14, PageID.696.)  Second, to the extent Plaintiff intended to illustrate that "he cannot maintain balance without the use of *a cane*[,]" (ECF No. 12, PageID.637 ¶ 4, 643, 656, 657-659; ECF No. 14, PageID. 696), Listings 11.00D2a and 11.00D2b provide examples of "an assistive device," which include "a walker, two crutches, or *two canes*."  It is also noteworthy that the ALJ's RFC assessment requires a cane for walking.  (ECF No. 10, PageID.63.)  Third, to the extent Plaintiff intended to illustrate that "he cannot do fine and gross motor movements like pinching, handling, fingering, gripping, grasping, reaching, turning, lifting, carrying, pushing, or pulling[,]" so as to satisfy Listing 11.00D2c (ECF No. 12, PageID.637, 643, 656-657), the ALJ concluded at Step 3 that Plaintiff . . .

> . . . does not have a marked limitation in physical functioning because
> his neurological disease process does not cause him to be seriously
> limited in the ability to initiate, sustain, and complete work-related
> physical activities such as standing, balancing, walking, or using both
> upper extremities for fine and gross movements.

(ECF No. 10, PageID.62.)  Also, within the ALJ's RFC discussion, as explained in

detail below, he gave "great weight" to Dr. Wentzloff's opinion that Plaintiff does

not have "significant manipulative limitations."  (ECF No. 10, PageID.66, 101.)  It

seems that Dr. Wentzloff's assessments that Plaintiff could not climb ladders,

ropes and scaffolds and should avoid even moderate exposure to hazards were

intended to accommodate "decreased grip strength."  (ECF No. 10, PageID.100-

101.)  The ALJ's RFC assessment includes postural, manipulative, and

environmental limitations that meet or exceed those assessed by Dr. Wentzloff.

(ECF No. 10, PageID.62-63.)  Plaintiff's statement that "[h]is upper extremity

problems – poor grip strength and the inability to lift more than 5 pounds – . . .

demonstrates [he] cannot do fine or gross motor movements with his upper

extremities[,]" (ECF No. 12, PageID.658-659), does not – by itself – illustrate error

in what amounts to the ALJ's Listing 11.00D2c conclusion.

## 2.    The RFC

Plaintiff's second statement of error not only lacks medical record citations

but also contains a mixture of various complaints about the ALJ's decision.

Fortunately, and likely in response to the Commissioner's argument (ECF No. 13,

PageID.685-693), this mixture comes into focus with Plaintiff's reply, which delineates arguments challenging the ALJ's treatment of Plaintiff's symptoms and the opinion evidence (ECF No. 14, PageID.696-699).

### a.    Opinion evidence

Plaintiff filed his application for benefits in June 2016. (ECF No. 10, PageID.170, 172.) Accordingly, the SSA assessed opinion evidence in accordance with 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017."). Acknowledging this regulation, ALJ Nguyen reviewed the opinion evidence and made two express assignments of weight that are relevant to the issue at bar.

First, the ALJ assigned "great weight" to the January 23, 2017 physical RFC assessment of state agency medical consultant, Jennie Wentzloff, M.D. (ECF No. 10, PageID.99-102.) The ALJ recognized Dr. Wentzloff as a "non-examining and non-treating source," who "had the opportunity to review the entire record at the time of her opinion[,]" whose "opinion is based upon that review . . . [,]" and who has "familiarity with the disability program and its requirements." (ECF No. 10, PageID.65-66.) Thus, the ALJ considered the lack of an examining or treatment relationship. 20 C.F.R. § 404.1527(c)(1) & (2). The ALJ also remarked that Dr. Wentzloff's opinion was "generally consistent with the claimant's examination findings," while still noting that the examination findings "do support some

limitations with reaching, handling, and fingering . . . ."  (ECF No. 10, PageID.66.)

Albeit in an unpublished case, the Sixth Circuit has advised that "an ALJ may

provide greater weight to a state agency physician's opinion when the physician's

finding and rationale are supported by evidence in the record."  *Reeves v. Comm'r*

*of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527).

Here, the ALJ's RFC assessment was consistent with Dr. Wentzloff's opinion,

except that the ALJ:  (i) *further* limited Plaintiff from occasionally to *never*

kneeling or crawling; (ii) *added* manipulative limitations from none to *frequently*

reaching, handling, and fingering; (iii) *added* use of a cane for walking; (iv)

*increased* vibration and hazard limitations from "avoiding even moderate

exposure" to "cannot tolerate exposure;" and (v) *further* specified *no* commercial

driving.  (*Compare* ECF No. 10, PageID.99-102; *with id*., PageID.62-63.)  Thus,

the ALJ clearly considered the supportability and/or consistency factors, 20 C.F.R.

§ 404.1527(c)(3),(4), and adjusted the RFC in accordance with his review of the

medical records.[3]

---

[3] Plaintiff claims that Dr. Wentzloff reviewed an "incomplete record," which
presumably means she did not consider any medical records post-dating the state
agency medical consultant's January 23, 2017 opinion.  (ECF No. 12, PageID.662,
664.)  Plaintiff also claims that Dr. Wentzloff "selectively read the record" when
citing evidence that "falls between two visits where Mr. McKinstry presented with
notable impairments and pain to his upper and lower extremities[,]" (ECF No. 12,
PageID.663), which appears to refer to her "additional explanation" for the RFC
(ECF No. 10, PageID.101-102).  However, if Plaintiff intended to base his

Second, the ALJ assigned "little weight" to the March 12, 2018 medical

source statement of Michigan Medicine's Matthew Ebright, M.D., who wrote:

> Jeffery has a chronic neurologic condition that limits his physical
> ability to do work.  He was first unable to work on 7/2015.  We
> recommend that he continue to stay off of work that requires any
> physical labor given his on-going neurologic condition.

(ECF No. 10, PageID.254 [Ex. 10E], 447 [Ex. 14F], 478 [Ex. 15F]; *see also* 463-

469 [Ex. 15F].)  The ALJ recognized Dr. Ebright as Plaintiff's neurologist but

noted that Dr. Ebright's assessment was "vague with no functional limitations

given."  (ECF No. 10, PageID.66.)  Indeed it is, as the reference to "work that

requires any physical labor" is hardly self-defining and connotes very physical

work involving heavy lifting and "on one's feet" activities.  Additionally, the ALJ

observed that "the physical labor restriction is not inconsistent with sedentary

work, and this assessment does not preclude all work, just physical labor."  (*Id*.)

Thus, the ALJ clearly considered the examining relationship, treatment

relationship, and/or specialization factors, as well as the supportability and/or

consistency factors, when assigning the MSS "little weight."  20 C.F.R. §

404.1527(c)(1)-(5).[4]  The ALJ's reasoning about Dr. Ebright's MSS is not

------

argument on any such records, it was incumbent upon him to bring them to the
Court's attention within his argument.

[4] To the extent Plaintiff claims that his treaters have advised him "to stay off
work," (*see* ECF No. 12, PageID.649, 653, 660, 662 & 659), and to the extent this
statement is supported by Dr. Ebright's March 12, 2018 opinions that Plaintiff

disrupted by the March 29, 2017 records from Peter Bambakidis, M.D. at Fairview

Hospital/Cleveland Clinic, who noted that "[t]he University of Michigan Medical

Center Department of Neurology has a very fine reputation and certainly there is

no reason to doubt the diagnosis at this time." (ECF No. 10, PageID.542.) If

Plaintiff intended to argue that Dr. Ebright's "records and his recommendations,"

as opposed to the single-page MSS, "show a clear reason for Mr. McKinstry to be

off work[,]" (ECF No. 12, PageID.662), it was Plaintiff's burden to bring them to

the Court's attention when making his assertion.[5]

   In the end, Plaintiff's argument that the ALJ improperly adopted the opinion

of a non-examining source over the opinion of Plaintiff's neurologists is

unconvincing. (ECF No. 12, PageID.661-662; ECF No. 14, PageID.697-698.)

Contrary to Plaintiff's assertion, the Undersigned believes the ALJ showed "a

connection between the evidence relied on and the conclusion he reached[,]" and

provided good reasons "why he trusted the opinion of a non-examining source who

had no indication of being a neurologist" over "the voluminous records of

---

"was first unable to work on 7/2015[,]" and should "continue to stay off of work
that requires any physical labor given his on-going neurologic condition[,]"
opinions on disability are "reserved to the Commissioner." 20 C.F.R. §
404.1527(d)(1).

[5] The same is true of Plaintiff's statement that, "over the course of Mr.
McKinstry's ordeal[,] several neurologists found that his neuropathy was the cause
of his symptoms and that his symptoms and diagnoses were congruent." (ECF No.
12, PageID.661.)

Plaintiff's primary care physicians and neurologists who found contrary to Dr. Wentzloff." (ECF No. 12, PageID.661, 662.) *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("the administrative law judge must make a connection between the evidence relied on and the conclusion reached."), *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion.") (citing 20 C.F.R. § 404.1527(c)(2)).

### b. Subjective symptoms

Plaintiff's alleged onset date is April 29, 2016, which appears to be when he "quit work because he [wa]s unable to perform due to pain." (ECF No. 10, PageID.61, 284, 606.) The SSA acknowledges that "symptoms, such as pain, are subjective and difficult to quantify," and, thus, provides that "any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be *taken into account* as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (emphasis added). The SSA will consider relevant factors, including:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or
        other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any
       medication you take or have taken to alleviate your pain or
       other symptoms;

(v)    Treatment, other than medication, you receive or have received
       for relief of your pain or other symptoms;

(vi)   Any measures you use or have used to relieve your pain or
       other symptoms (e.g., lying flat on your back, standing for 15 to
       20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning your functional limitations and
       restrictions due to pain or other symptoms.

(*Id.*)  Moreover, "[t]he determination or decision must contain specific reasons for

the weight given to the individual's symptoms, be consistent with and supported by

the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms."

SSR 16-3P, 2017 WL 5180304, *10 (S.S.A. Oct. 25, 2017).  *See also* SSR 16-3p,

2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016) (same).

ALJ Nguyen appropriately considered Plaintiff's subjective statements when

arriving at the conclusion that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of [the alleged] symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the

reasons explained in this decision."  (ECF No. 10, PageID.64.)  Preliminarily, the

ALJ acknowledged 20 C.F.R. § 404.1529 and SSR 16-3p.  (*Id.*, PageID.63.)  Then,

the ALJ reviewed Plaintiff's disability report (Ex. 2E), Plaintiff's function report

(Ex. 3E), his appellate disability report (Ex. 7E), and his hearing testimony (see

ECF No. 10, PageID.74-92).  (*Id*., PageID.63.)  Next, the ALJ reviewed multiple

treatment records, including, *inter alia*, the following post-AOD records:

- The September 1, 2016 left knee MRI, which revealed large fluid collection in the suprapatellar bursa, no obvious fracture or dislocation, and possible "slightly larger" joint effusion compared to the May 24, 2015 study (ECF No. 10, PageID.408);

- The January 9, 2017 notes from Nassim Rad, M.D., who remarked that Plaintiff's same-day EMG demonstrated "improvement of nerve conduction studies with continued prolonged latencies, decreased conduction velocities and prolonged F-responses[,]" (ECF No. 10, PageID.413);

- The January 11, 2017 notes from Kellie L. Mumford, PA-C, who remarked that Plaintiff's knee x-rays revealed adequate joint space; no fractures, blastic or lytic lesions; and, good alignment (ECF No. 10, PageID.422); and,

- The August 6, 2018 notes from neuromuscular fellow Benjamin Claytor, M.D., who remarked on the October 16, 2017 cervical spine MRI for its "mild multilevel degenerative changes" (ECF No. 10, PageID.634).

(*Id*., PageID.64-65.)  Finally, the ALJ cited:  (i) multiple medical record exhibits in

support of his conclusion that "[t]hese findings are not consistent with the

claimant's complaints of disabling symptoms, but rather tend to support the

limitations in the [RFC] of sedentary exertional work with the additional

limitations indicated[;]" and, (ii) the function reports in support of his conclusion

that Plaintiff's "reported activities of daily living are consistent with the [RFC] set forth herein." (ECF No. 10, PageID.65.) For example, with reference to Plaintiff's tri-weekly intravenous immunoglobulin (IVIg) treatment, the ALJ noted Plaintiff's "any side effects from this treatment other than an occasional headache." (ECF No. 10, PageID.65; *see also id*., PageID.307, 315, 322, 329, 336, 343.) Thus, the ALJ – at least – considered Plaintiff's "daily activities" and "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms," as the regulations required him to do. 20 C.F.R. § 404.1529(c)(3)(i), (iv).

Plaintiff's opposition to the ALJ's treatment of subjective symptoms is not convincing. To be sure, on several occasions, Plaintiff references the January 2017 Disability Determination Services (DDS) determinations that: (1) Plaintiff's medically determinable impairments (MDIs) could reasonably be expected to produce his pain or other symptoms; and, (2) Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective medical evidence alone. (ECF No. 10, PageID.99; ECF No. 12, PageID.651, 659, 661-662, 663; ECF No. 14, PageID.698.) Also, Plaintiff points to his September 13, 2018 testimony that he is comfortable lifting, at most, three to five pounds, he can sit for about 20 minutes, he can stand for a

"[g]ood 10 minutes, 15[,]" and he can walk "[m]aybe 100 yards if that."  (ECF No. 10, PageID.80-82.)

However, the ALJ is not required to accept either the DDS's conclusions or Plaintiff's assertions.  Instead, the ALJ is required to assess Plaintiff's subjective symptoms in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p.  Plaintiff's related argument does not adequately challenge the ALJ's treatment of Plaintiff's symptoms; in fact, Plaintiff does not even cite Section 404.1529 or Ruling 16-3p. (*See* ECF No. 12, PageID.659-663; ECF No. 14, PageID.696.)  Accordingly, the ALJ's treatment of Plaintiff's subjective symptoms should be affirmed.

### c.    Weight of the evidence

Interweaved with Plaintiff's opinion evidence and subjective symptoms arguments is an additional one based on the "great weight of the evidence," including that the ALJ improperly relied on "periodic improvements" – apparently referring to the ALJ's Listing 11.14 discussion or review of the medical evidence (ECF No. 10, PageID.62, 64-65) – or that the ALJ "selectively read the record." (ECF No. 12, PageID.660-661, 664; ECF No. 14, PageID.698-699.)[6]

---

[6] *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014) ("although the ALJ stated that she considered all the medical evidence marked as exhibits, her reasoning shows that she discounted the severity of Gentry's conditions—based on periodic improvements and cessation of treatment—by failing to address certain portions of the record, including the evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications."); *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004)

Plaintiff uses phrases like "overwhelming evidence," even claiming that "[f]rom July 2015, Mr. McKinstry's neurologists have consistently maintained he should not work[,]" and that "the record is replete with the many instances of upper extremity weakness and numbness, lower extremity numbness and weakness, Plaintiff's extreme fatigue, and an inability to do the basic activities of life."  (ECF No. 12, PageID.659, 661.)  Plaintiff asserts that he "still has demyelinating polyneuropathy, fatigue, loss of grip strength, balance issues," and "cannot use his hands, arms, or stand without a cane." (*Id*., PageID.661.)  However, as noted above, whether an individual is disabled under the SSA is an issue reserved to the Commissioner, 20 C.F.R. § 404.1527(d), and Plaintiff's argument does not provide any medical record citations for this "overwhelming evidence."  Moreover, "[w]e may not reweigh conflicting evidence on appeal, but instead must affirm [the ALJ]'s decision [where] substantial evidence supports it."  *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004).

In Plaintiff's opinion, "a reasonable mind would never be able to conclude that [Plaintiff] was anything but disabled."  (ECF No. 12, PageID.660.)  *Rogers*, 486 F.3d 241; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Plaintiff

---

(the Commissioner's defense of the ALJ's denial of benefits was without substantial justification ". . . where the administrative law judge was found to have selectively considered the evidence in denying benefits[.]").  (ECF No. 12, PageID.654-655.)

supports this argument with references to his hearing testimony and somewhat

surmisable medical records, *e.g.*, Plaintiff claims that:

- "[s]ince 2015, his neurologists have told him to stay off work due to his neuropathy[,]" which is seemingly a reference to Dr. Ebright's March 12, 2018 MSS (ECF No. 10, PageID.478);

- "[m]ultiple EMG's have confirmed his conditions[,]" which is seemingly a reference to March 12, 2015, July 20, 2015 and/or January 9, 2017 EMGs;[7]

- "[h]is symptomology has steadily worsened since 2014[;]"

- "[h]e continues to have fatigue, loss of balance, and pain[;]" and,

- "[h]is Cleveland Clinic visit shows the symptomology and confirms his doctors' conclusions from University of Michigan[,]" which is a reference to Dr. Bambakidis's March 29, 2017 (ECF No. 10, PageID.542) but also to any of a number medical record exhibits – 2F, 7F, 9F, 11F, 14F & 15F, comprising approximately 67 pages – that are attributable to the University of Michigan.

(ECF No. 12, PageID.660.)  However, Plaintiff has not successfully challenged the

ALJ's treatment of the opinion evidence or his subjective symptoms; nor has he

met his burden to demonstrate error at Steps 1-4.  *Walters*, 127 F.3d at 529.

Whatever Plaintiff says about the consistency of his neurologists'

---

[7] On two occasions within his argument, Plaintiff refers to "[m]ultiple EMG's." (ECF No. 12, PageID.658, 660.)  Yet, there is record evidence of:  (1) March 12, 2015 and July 20, 2015 EMGs, each of which pre-dates Plaintiff's April 29, 2016 AOD (ECF No. 10, PageID.486-487; ECF No. 10, PageID.286-288 [Ex. 2F], 377-378 [Ex. 5F], 525-527 [Ex. 18F], 629-630 [Ex. 21F]); and, (2) a January 9, 2017 EMG (ECF No. 10, PageID.413 [Ex. 11F]).

recommendations, the EMGs' confirmation of his conditions, or the Cleveland Clinic record's confirmation of his University of Michigan doctors' conclusions (ECF No. 12, PageID.659-660), Plaintiff has not shown that the ALJ erroneously interpreted the treatment records (ECF No. 10, PageID.64-65).  Instead, as set forth above, the Court considers "the ALJ's decision determinative . . ." because "there is such relevant evidence as a reasonable mind might accept as sufficient to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (internal quotations and citation omitted).

### F.   Conclusion

In sum, Plaintiff has not satisfied his burden to overturn the ALJ's conclusions at Step 3 or within the RFC assessment as to the opinion evidence or Plaintiff's subjective symptoms. *Walters,* 127 F.3d at 529.  He has failed to demonstrate legal error or that the ALJ's opinion is unsupported by substantial evidence.  Accordingly, as detailed in the foregoing discussion, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's cross-motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being

served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 4, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

25